UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

```
WARREN S. WRAGG, JR.,              )
                                   )
            Plaintiff,             )
    vs.                            )    4:10-cv-00049-SEB-WGH
                                   )
                                   )
MICHAEL J. ASTRUE, Commissioner    )
 of the Social Security Administration, )
                                   )
            Defendant.             )
```

**Entry Discussing Complaint for Judicial Review**

Warren S. Wragg, Jr., ("Wragg") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

Wragg filed an application for DIB on April 26, 2007, alleging an onset date of disability of December 11, 2005. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on July 15, 2009. Wragg appeared, accompanied by his attorney. Medical and other records were introduced into evidence. Wragg and a vocational expert ("VE") testified at the hearing. The ALJ issued a decision denying benefits on September 22, 2009. On March 22, 2010, the Appeals Council denied Wragg's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Wragg last met the insured status requirements of the Act on December 31, 2007; (2) Wragg did not engage in substantial gainful activity during the period from his alleged onset date of December 11, 2005, through his date last insured of December 31, 2007; (3) through the date last insured, Wragg had the following severe impairments: neuropathy, carpal tunnel syndrome, sleep apnea, hypersomnia, irritable bowel syndrome, obesity, depression, anxiety, and chronic pain syndrome; (4) through the date last insured, Wragg did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) through the date last insured, Wragg had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he would need a sit/stand option; could do no pushing/pulling with the lower extremities; could do no crawling or climbing of ladders, ropes or scaffolds; could have no exposure to dangerous heights or hazardous equipment; could do only occasional balancing, stooping, kneeling, crouching, or climbing of ramps or stairs; in a generally low stress, task-oriented environment with no strict production quotas, away from the general public, and only occasional contact with supervisors and coworkers; (6) through the date last insured, Wragg was unable to perform any past relevant work; (7) Wragg was born on December 8, 1961, and was 46 years old, which is defined as a younger individual age 18-44, on the date last insured, and he subsequently changed age category to a younger individual age 45-49; (8) Wragg had at least a high school education and was able to communicate in English; (9) transferability of jobs skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Wragg was "not disabled," whether or not he had transferable job skills; and (10) through the date last insured, considering Wragg's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Wragg had not been under a "disability," as defined in the Act, at any time from December 11, 2005, the alleged onset date, through December 31, 2007, the date last insured.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

> A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).
>
> > The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.
>
> *Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.
>
> The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.    Analysis

The ALJ determined that Wragg had severe impairments consisting of neuropathy, carpal tunnel syndrome, sleep apnea, hypersomnia, irritable bowel syndrome, obesity, depression, anxiety, and chronic pain syndrome but he could perform a range of sedentary jobs with various restrictions. Wragg argues that the ALJ did not include all of Wragg's limitations in his RFC assessment and in his hypothetical question posed to the VE.

Wragg contends that the ALJ failed to take account of his carpal tunnel syndrome symptoms of difficulty handling and fingering, failed to take account of his sleep apnea and hypersomnia symptoms of falling asleep when he sits, failed to take account of his need to make frequent restroom trips due to his irritable bowel condition, and failed to take account of his depression as reflected by a Global Assessment of Functioning ("GAF") score of 50. The Commissioner responds that these symptoms were not supported by medical evidence of record, and therefore, no error occurred.

Wragg's claims of error implicate the ALJ's credibility determination. Wragg asserts that the ALJ failed to build a logical bridge between the evidence of record and his findings. "The ALJ's credibility determinations are entitled to special deference but the ALJ is still required to build an accurate and logical bridge between the evidence and the result." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Administrative law judges must

"carefully evaluate all evidence bearing on the severity of pain and give specific reasons for discounting a claimant's testimony about it." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). As to the issue of credibility in this case, the ALJ concluded the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 19).

The Seventh Circuit has recently discussed in more than one decision its view of this "boilerplate" credibility assessment language used by ALJs. *See Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue,* 630 F.3d 693, 696 (7th Cir. 2011)*; Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

> The administrative law judge's opinion states that 'after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.' This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony.

*Parker,* 597 F.3d at 922.

The court finds no significant difference between an ALJ concluding that a claimant's statements are "not entirely credible" and an ALJ concluding that a claimant's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment" when, in either case, there is no discussion of the weight given to the pertinent statements. The important issue here is whether the ALJ has pointed to evidence suggesting that Wragg exaggerated his various symptoms or suggesting that he is a malingerer. *See Martinez*, 630 F.3d at 696 ("There is no explanation of which of Martinez's statements are not entirely credible or how credible or noncredible any of them are."). The court concludes that the ALJ has not.

The court will address each of the symptoms highlighted by Wragg. First, as to Wragg's carpal tunnel syndrome, the ALJ noted that Wragg had carpal tunnel syndrome in both wrists which caused mild pain and numbness in his hands and caused his wrists to fall asleep often when he held onto something like a book or steering wheel. (R. at 18-19). While questioning the VE during the hearing, the ALJ stated, "[a]nd as far as the carpal tunnel syndrome, I'll ask you about handling and fingering after you did define some jobs, if there are any jobs." (R. at 41). The VE testified that for all of the jobs he had identified, at least one hand would require frequent handling, and otherwise the requirement would be occasional to frequent. (R. at 42-43). Fingering would be required occasionally for all three of the sedentary jobs identified. (R. at 43).

In the decision, the ALJ concluded that although Wragg had mild carpal tunnel syndrome, "this would limit his ability to lift more than the minimal amount of weight than that required by sedentary exertional work." (R. at 20). The only comment made in the ALJ's assessment of Wragg's restrictions caused by carpal tunnel syndrome was the amount of weight Wragg could lift. The ALJ failed to discuss the evidence from the VE concerning Wragg's need to do frequent handling or occasional fingering. The Commissioner cites a report by a state agency physician who opined that Wragg had no limitations with regard to his ability to handle and/or finger. The ALJ, however, did not mention, much less rely on, this particular finding. In fact, the ALJ rejected the state agency opinion. *Id.* The ALJ took into consideration the combination of restrictions from Wragg's conditions and "found the even more restrictive residual capacity assessment cited herein." *Id.* The Commissioner's rationale is not persuasive. *See Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010)("[t]he government's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error."). The ALJ's RFC is not supported by substantial evidence to the extent he failed to account for Wragg's carpal tunnel syndrome, *i.e.*, wrist pain and numbness.

Second, Wragg argues that the ALJ did not properly account for his problems staying awake during the day. The ALJ acknowledged that Wragg had been diagnosed with sleep apnea and idiopathic hypersomnia. (R. at 19). Wragg used a Bi-PAP machine and took medication which provided some improvement, but he reported to doctors that he remained tired and took naps in the afternoon. *Id.* Wragg testified that if he sat still for more than an hour, he would fall asleep. (R. at 18). He testified that he napped 3 times a day, ranging from 2-3 hours each. *Id.* Wragg's sleep apnea condition had been markedly worsening. *Id.* Wragg quit work in 2002 because he could not stay awake. *Id.* He reported falling asleep 4-6 times a day even with medication, and in fact, some of his medications increased his drowsiness. *Id.* None of this testimony was rejected by the ALJ, and yet the ALJ did not explain how, with these symptoms, Wragg could work on a regular and continuing basis, 8 hours a day, 5 days a week.

It is possible that the ALJ attempted to accommodated Wragg's excessive daytime sleeping by giving Wragg "the opportunity to change positions from sitting to standing and back, as provided for in a sit/stand option." (R. at 20). The evidence, however, does not

support a finding that by merely changing positions every hour or so Wragg would be able to stay awake for an 8 hour period of time. The ALJ noted that "[i]t was rare for Wragg to stay awake for 8 hours at a time." (R. at 19).[1] Being able to stay awake for an hour or two at a time, and then sleep, would not be acceptable in a work situation. Again, as pointed out by Wragg, according to the VE, if Wragg fell asleep at work ("at unscheduled times"), this would preclude any type of work. Indeed, this is why Wragg stopped working in 2002. The ALJ erred by crediting Wragg's testimony about his inability to stay awake for even two hours at a time while failing to account for this in his RFC determination.

Next, the ALJ acknowledged that Wragg had severe irritable bowel syndrome which caused chronic diarrhea. (R. at 19). He noted that because of Wragg's pain and diarrhea, he could not stay at a work station for more than 2 hours at a time. *Id.* The ALJ stated that "[t]hough he has a worsening of symptoms during times of stress, this condition appears to be stabilized on medication." *Id.* The ALJ further stated that "[t]here is no indication that [Wragg's] irritable bowel syndrome would routinely take him away from his work for more than a few minutes at a time, especially in a low stress environment." (R. at 20). "Though the claimant alleges chronic diarrhea from 5 - 7 times a day, he has been able to maintain his weight without difficulty." *Id.*

The ALJ appears to have accepted Wragg's allegations of chronic diarrhea as credible. Indeed, he did not conclude that such complaints were not credible or not supported by the record. However, the ALJ reasoned that Wragg's chronic diarrhea would not prevent him from performing certain sedentary jobs because Wragg had not lost weight as a result of the diarrhea. Such a finding does not address the issues that would arise in a work setting. The VE testified that if Wragg had to take frequent restroom trips, that would preclude any type of work. (R. at 45). This evidence is significant and was not discussed by the ALJ.

Finally, Wragg argues that the ALJ failed to give his emotional problems, his depression, adequate weight as reflected by Dr. Terrell's assessment of a GAF score of 50, which indicates serious symptoms. Wragg contends that the ALJ failed to take into account how such a severe rating would further limit him. The Commissioner responds that the ALJ did not ignore Dr. Terrell's GAF rating and reasonably evaluated Wragg's mental impairment. The court agrees.

The ALJ acknowledged the GAF score of 50 assigned by the consultative psychologist, but noted that "there is no indication that [Wragg's] emotional impairments were so severe for a period of 12 months." (R. at 20). "In addition, the actual restrictions given by the consultative examiner. . . do not corroborate a Global Assessment of Functioning of 50." *Id.* The ALJ did give great weight to Dr. Terrell's opinion that Wragg should not work directly with numerous others. *Id.* Dr. Terrell's other limitations regarding

---

[1] What Wragg actually said at the hearing was that he could not go an eight hour stretch without falling asleep. (R. at 30).

the need to change positions of sitting, standing, walking and moving periodically were given little weight because they were outside the scope of the psychologist's expertise and actual examination. *Id.* These conclusions were reasonable and the court can trace these findings from the evidence. Furthermore, the ALJ noted that Wragg's treatment for depression and anxiety had been conservative with only medication and sporadic counseling, and that the medication had helped. *Id.* Contrary to Wragg's contention, a diagnosis of major depression does not necessarily translate to a finding of disability. Under these circumstances, the ALJ adequately explained his reasoning. The ALJ's evaluation of Wragg's mental impairment was supported by substantial evidence and there was no error in this regard.

Generally, when an ALJ relies on VE testimony in determining a claimant's disability at step five, the hypothetical question drawn from the RFC assessment and posed to the VE "must include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Here, with the exception of the ALJ's evaluation of Wragg's mental impairment, in his RFC assessment the ALJ failed to adequately account for the functional limitations discussed above. In particular, the VE testified that Wragg's inability to stay awake and his need for frequent restroom breaks would preclude any type of work. Accordingly, the ALJ's decision is not supported by substantial evidence.

Under these circumstances, the court cannot trace the path of the ALJ's reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (an ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that [he] considered the important evidence and . . . to enable us to trace the path of [his] reasoning.") (internal quotation omitted). The court requires that "an ALJ build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Id.* (internal quotation omitted).

### III. Conclusion

For the reasons set forth above, the ALJ's conclusion that Wragg was not disabled is not supported by substantial evidence. The court, therefore, is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/15/2011

*[Signature: Sarah Evans Barker]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana